515 So.2d 646 (1987)
CITY OF HOUMA
v.
C-WELL LTD. d/b/a Live Oak Fence Company and Commercial Union Insurance Company, Inc.
No. 86 CA 0733.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
As Corrected October 23, 1987.
As Amended on Rehearing January 7, 1988.
Robert P. Cuccia, Houma, for plaintiff and second-appellantCity of Houma.
*647 Edward A. Rodrique, Jr., New Orleans, for defendant and first-appellantCommercial Union Ins. Co.
Leslie J. Clement, Jr., Thibodaux, for defendants and appellees, Larry Barrios Builders, Inc., Larry & Diane Barrios.
Before SAVOIE, CRAIN and LEBLANC, JJ.
SAVOIE, Judge.
This is a suit for liquidated delay damages allegedly due under a construction contract between the City of Houma (the City) and C-Well Limited d/b/a Live Oak Fence Company (Live Oak). The City named as defendants Live Oak and Commercial Union Insurance Company (Commercial), Live Oak's surety. Commercial then filed a third party demand against Larry Barrios and his wife Diane as guarantors and filed a reconventional demand against the City for $15,039.92, which the City had retained from the original contract. The trial court awarded the City liquidated damages in the amount of $8,625.00 and dismissed Commercial's claim against Larry Barrios. Commercial and Barrios appeal. We reverse.
The facts of this case are generally not in dispute. The City awarded a construction contract to Live Oak pursuant to a bid proposal submitted by Live Oak in May 1983. The contract provided that Live Oak was to erect fences around the City's power plant and water plant and to install a gate at the power plant. The contract, signed June 6, 1983, allowed Live Oak thirty-one (31) working days to complete the projects for a total price of $29,643.00. It also provided for stipulated delay damages in the amount of $75.00 per day.
Commercial issued a performance bond as surety for Live Oak, while Larry Barrios and his wife contracted with Commercial as guarantors for the construction contract. The record is replete with testimony and evidence of partial construction, modifications to the plans and specifications, and numerous delays. These delays were often at the request of the City, but were also due to bad weather and some fault of Live Oak. In any event, the total project was not completed during the specified time and all work by Live Oak had ceased by late November, 1983.
On January 5, 1984, Live Oak received a letter from the City placing it in default for failure to complete the fencing. Commercial received the letter on January 13, 1984. On January 20, 1984, Live Oak notified the City in writing that it was unable to complete the work due to financial difficulties.
Sometime between January 13, 1984 and February 8, 1984, Commercial discussed the situation with the other guarantor, Mr. Barrios. Mr. Barrios, owner of Larry Barrios Builders, offered to complete the work for the remainder of the contract price, i.e., the original contract price less the progress payments made to Live Oak. The City, through Commercial, rejected Barrios' offer.
On February 8, 1984, Commercial solicited bids from four local fence companies and on February 24, 1984, received a bid of $18,900.00 from Leroy's Fence Company to complete the work. After much delay, Commercial notified Leroy's Fence Company on September 18, 1984, to finish the work. The project was finally completed on November 13, 1984.
The City then filed suit against Commercial as surety for delay damages and attorney fees. Commercial then named Barrios and his wife as third party defendants under the guaranty agreement and filed a reconventional demand against the City for the $15,039.92 retained from the original contract price.
The trial court held that the City was entitled to liquidated delay damages for 115 days or $8,625.00. That amount was to be setoff against the $15,039.92 withheld by the City and, therefore, judgment was rendered in favor of Commercial on its reconventional demand in the amount of $6,411.22[1]. The court dismissed Commercial's *648 claim against Barrios relying on the abuse of rights doctrine. Only Barrios and Commercial have appealed and no appellate brief has been filed on behalf of the City.
On appeal numerous specifications of error were assigned generally raising the following issues: (1) are liquidated damages recoverable under the construction contract? (2) if liquidated damages are recoverable, in what amount? (3) is the doctrine of abuse of rights applicable to this case?
Liquidated Damages
Commercial contends that the City caused Live Oak's failure to perform within the time allowed by the terms of the contract, preventing the City from recovering delay damages. We agree.
Article 2.3, entitled Commencement of Contract Time: Notice to Proceed, of the General Conditions provides, in pertinent part:
The contract time will commence to run on the thirtieth day of the effective date of the agreement, or, if a Notice to Proceed is given, on the day indicated in the Notice to Proceed; but in no event shall the contract time commence to run later than the one hundred twentieth day after the day of bid opening or the thirtieth day after the effective date of the agreement.... A Notice to Proceed may be given at any time within thirty days after the day on which owner delivers the executed agreement to contractor.
The record indicates that the day of bid opening was May 10, 1983 and that the effective date of the agreement was June 6, 1983. Using these dates we might construe the contract as stating that "the contract time will commence to run [on July 6, 1983] ... but in no event shall the contract time commence to run later than [September 10, 1983] or [July 6, 1983]...." However, it is not clear whether the contract time must commence before the earlier or later date.
LSA-C.C. art. 2057 provides:
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.
Accordingly, we must interpret this provision against the City, the drawer and obligee of the contract. Therefore, we find that the contract by its terms required the contract time to commence 30 days after the effective date of the agreement (i.e., June 6, 1983) which would be July 6, 1983.
The record shows that the City caused the commencement of work on the power plant to be delayed until August 2, 1983. Furthermore, the City was not ready for work to begin at the water plant as late as September 22, 1983. Thus, Live Oak was prevented by the City from commencing work on and after July 6, 1983.
We find that Live Oak's failure to perform within the allowed time (31 days after the mandatory commencement time provided for by the contract, i.e., July 6, 1983) was due to the bad faith of the City. LSA-C.C art. 2003 provides in part: "An obligee may not recover damages when his own bad faith has caused the obligor's failure to perform...." Accordingly, we find that the City is not entitled to recover the delay damages provided for in the contract. See G. Salvaggio & Co., Inc. v. Delta Heights, Inc., 277 So.2d 754 (La.App. 4th Cir.1973).
Abuse of Rights
Commercial assigns as error the trial court's application of the abuse of rights doctrine in dismissing its claim against Larry Barrios and his wife as guarantors. We agree.
The doctrine of abuse of rights is grounded on the theory that a party may exercise his legal rights, but should not be able to "abuse" his legal rights in certain situations. Louisiana courts have allowed the application of the doctrine when any of the following criteria are present:
1) exercise of rights exclusively for the purpose of harming another or with the predominant motive to cause harm; 2) *649 the non-existence of a serious and legitimate interest that is worthy of judicial protection; 3) use of the right in violation of moral rules, good faith or elementary fairness; or 4) exercise of the right for a purpose other than for which it was granted. Real Estate Services, Inc. v. Barnes, 451 So.2d 1229, 1230 (La.App. 4th Cir.1984) (Citations omitted).
The trial court found that Commercial had the right to appoint Barrios to complete the project pursuant to the provisions of its performance bond, and that it was in bad faith in failing to insist that the City accept Barrios.[2] The trial court further held that Commercial's acquiescence to the City's refusal of Barrios constituted a rejection of Barrios' offer by Commercial and that Commercial was therefore guilty of an abuse of rights.
After a careful review, we cannot agree with the trial court's application of the abuse of rights doctrine under these circumstances. Commercial attempted to use Barrios to complete the job, but the City refused to allow Barrios to do so. Commercial knew of the stipulated delay damages and was reasonable in attempting to find another contractor soon after the City's refusal of Barrios. Commercial's actions do not meet any of the four criteria of the Barnes case which would trigger the application of the abuse of rights doctrine. Therefore, we find nothing to prevent Commercial from recovering from Barrios under their contract of guarantyship.
Accordingly, judgment is rendered in favor of Commercial and against the City of Houma in the amount of $15,039.92 together with legal interest thereon from date of judicial demand until paid. We reverse the judgment of the trial court and render judgment in favor of Commercial against Larry Barrios, Diane Barrios, and Larry Barrios Builders in the amount of $3,860.08 together with legal interest thereon from date of judicial demand until paid. This award represents the difference in the $18,900.00 paid by Commercial to Leroy's Fence Company and the $15,039.92 owed by the City to Commercial. Costs of this appeal in the amount of $964.40 are to be paid by the City of Houma.
REVERSED AND RENDERED.
NOTES
[1] This seems to be an error of mathematics. The difference between $15,039.92 and $8,625.00 is $6,414.92.
[2] The surety agreement provides, inter alia as follows:

"The surety may promptly remedy the default or shall promptly 1) complete the contract in accordance with its terms and conditions, or 2) obtain a bid or bids for completing the contract ..."