QUICK ZONE, INC.
v.
T.T.N. CATHY, L.L.C. AND THOMAS NGUYEN
No. 2008 CA 2551.
Court of Appeals of Louisiana, First Circuit.
June 12, 2009.
MELVIN BURMASTER, ROBERT MARRERO, Counsel for Plaintiff/Appellant, Quick Zone, Inc.
JERALD BLOCK, DAVID ARDOIN, Counsel for Defendant/Appellee, T.T.N. Cathy, L.L.C.
JACK RICCI, GARY GIEPERT, Counsel for Defendants/Appellees, Action Realty, Inc. and Joseph New Roger
GUS FRITCHIE, III, Counsel for Defendants/Appellees, Century 21 Acadia Realty Development Co., Inc. and Lisa Thibodaux
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
WHIPPLE, J.
This is an appeal from a judgment of the Seventeenth Judicial District Court in Lafourche Parish. Plaintiff, Quick Zone, Inc. (Quick Zone), filed suit against defendant, T.T.N. Cathy, L.L.C. (TTN Cathy), for specific performance and/or damages for T.T.N. Cathy's refusal to honor an alleged option to purchase immovable property pursuant to a lease agreement between the parties.[1]
TTN Cathy is the owner of immovable property located at 1422 W. Tunnel Boulevard in Houma, Louisiana (the property). TTN Cathy is a limited liability corporation whose sole shareholders include Thomas Nguyen, his wife Cathy, and his daughter Teri. Nguyen, who is the president of TTN Cathy and who handled the transactions at issue for TTN Cathy, is a Vietnamese American with a limited command of the English language.
Prior to TTN Cathy's acquisition of the property in 2003, the premises had been operated commercially as a gas station and convenience store. In May 2003, Nguyen entered into an agreement with Century 21 Acadia Realty & Development Company, Inc. (Century 21 Acadia Realty), through its agent Lisa Thibodaux, whereby TTN Cathy employed Century 21 Acadia Realty to solicit tenants to lease the property. According to the agreement, a provision requiring the prospective lessee to purchase all movable equipment and the business for $60,000.00 had to be included in any lease of the property. The agreement further provided that lease of the property and sale of the equipment was "co-listed" with Century 21 Action Realty, through its agent Joseph Roger, Jr.
Several days later, the parties further entered into an "Exclusive Right to Sell Listing Agreement," whereby TTN Cathy granted Century 21 Acadia Realty and Century 21 Action Realty the exclusive right to sell the property for $1,100,000.00. However, this listing agreement provided that if TTN Cathy leased the property, the listing agreement would terminate. Nguyen testified that TTN Cathy's goal was to lease the property, but TTN Cathy was willing to sell the property for the above-stated price.
In June 2003, Roger advised Nguyen that he had a prospective tenant for the property, i.e., Quick Zone. Roger, who acted as a dual agent for both Quick Zone and TTN Cathy, handled the ensuing negotiations between the parties. The parties ultimately agreed upon a lease price, and Roger drafted the "Lease Agreement" and a document entitled "Addenda to Agreement to Lease" (the Addenda), ostensibly to reflect the parties' agreement. While Nguyen had been provided with a copy of the lease form prior to the date the parties executed the agreement, he did not see the Addenda until the time of signing of the agreement.
The Addenda contained the following provisions at the heart of this dispute:
The undersigned Seller/Landlord and Tenant hereby further agree to the following:
* * *
Tenant has first option to buy this property within 2 years at a sales price of $350,000.00.
* * *
Property remains for sale subject to tenant's rights. If another offer to buy is satisfactory to seller during the lease period, tenant has 30 days from written notice by Seller/Landlord to negotiate a satisfactory sales price or allow the sale of the property (subject to tenant's rights).
The Lease Agreement and Addenda were executed on June 30, 2003. Thereafter, by letter dated May 25, 2005, Quick Zone notified TTN Cathy that it desired to exercise its option to purchase the property for the price of $350,000.00. When TTN Cathy refused to execute an act of sale for the property, Quick Zone instituted this suit for specific performance and/or damages.
A bench trial in this matter was commenced on April 10, 2008. At trial, Mamoon Khalil, the vice-president of Quick Zone, testified that Quick Zone was interested in leasing the property if it could also acquire an option to purchase the property. Khalil interpreted the provisions to mean that Quick Zone could be "push[ed]" into "exercising [its] option" if TTN Cathy received another offer, or, otherwise, TTN Cathy would be free to sell to the third party. Khalil's statement seemed to indicate that he believed that Quick Zone would have retained the right to exercise its option to purchase the property for $350,000.00, even after TTN Cathy received an offer from a third party. Khalil thereafter agreed that his understanding of the agreement was that if a higher offer was made "the next day," Quick Zone could have then "matched" the offer. However, it is unclear precisely what was meant by "the next day," i.e., whether he meant the day after the agreement was signed or the day after the purported two-year option expired.
Khalil further explained his understanding of the above provisions of the Addenda as follows: "If I want to exercise my [i.e., Quick Zone's] option, I have to bid [$]350,000. If my option, the two years expired and another buyer came in on buying the property, they had to come back to me. I still had the second  the first option on buying it." When asked at that point if he understood that he could "match" some other buyer, Khalil responded, "If they came in after my two years expired." Thus, taking his testimony as a whole, it appears that Khalil believed that during the two-year purported option period, Quick Zone could exercise the alleged option to purchase the property for $350,000.00, even if a better offer was received, (presumably if exercised timely within the thirty days after notice of another offer). However, after the two-year period expired, Quick Zone would have then had the right to "match" any offer made by a third party to purchase the property.
Conversely, Nguyen testified as to his understanding of the alleged option to purchase in the Addenda. Nguyen understood that Quick Zone was simply making an offer to purchase the property for $350,000.00. When he first saw the Addenda, which was during the meeting wherein the parties executed the lease agreement, he questioned Roger about the clause providing that Quick Zone had an option to buy the property for $350,000.00, because he did not understand what the clause meant. According to Nguyen, Roger responded that the $350,000.00 provision was "just an offer" and that TTN Cathy would not be obligated to sell the property to Quick Zone for that amount.[2] Thus, Nguyen understood that Quick Zone was simply making an offer to purchase the property for $350,000.00, but that TTN Cathy was not obligated to accept that offer. Based on this understanding, Nguyen signed the Addenda on behalf of TTN Cathy.
On the other hand, the testimony of Roger, who drafted the Addenda, as to his interpretation of the provisions at issue was somewhat confusing. Initially, he testified that he interpreted the provisions at issue to mean that if TTN Cathy received an offer to buy the property from a third person within the two-year "option" period, TTN Cathy would be required to give notice to Quick Zone that it had received a satisfactory offer, and Quick Zone would then have thirty days "to either exercise their [sic] option to buy or allow another sale to happen." He explained that his understanding of the provisions was as follows: "Whoever came along, hypothetically, and wanted to make him an offer for whatever amount of money, they could do that. But tenant still had the right to exercise their option."
However, he then seemed to indicate that if TTN Cathy got an offer for $350,000.00, but that the offer was for a cash sale, Quick Zone would have then had the right to "renegotiate" with TTN Cathy to agree to a cash sale for that price. Thus, he seemed to indicate that Quick Zone could have been required to renegotiate the terms of the offer to match a third party's offer. Nonetheless, when questioned further about whether he interpreted these clauses to require Quick Zone to negotiate a satisfactory price with TTN Cathy in the event TTN Cathy received an offer lower than $350,000.00 from a third party, Roger responded, "Not [to] make another offer, but [to] exercise their [sic] option to buy for the 350,000."[3]
At the close of Quick Zone's case, counsel for TTN Cathy moved for involuntary dismissal of Quick Zone's claims against it. Counsel for TTN Cathy argued that the above-quoted provisions of the Addenda were ambiguous and, accordingly, that Quick Zone had failed to prove its entitlement to relief.
Following argument by the parties in support of and in opposition to the motion, the trial court rendered judgment in favor of TTN Cathy, granting the motion for involuntary dismissal and dismissing Quick Zone's principal demand against TTN Cathy. In oral reasons for judgment, the trial court found that the two contractual provisions at issue were ambiguous and could not be reconciled. Specifically, the trial court concluded that the first clause at issue, when read alone, appeared to be an option pursuant to LSC.C. arts. 1933 or 2620.[4] The court further found that the latter provision of the Addenda at issue could be interpreted to be a right of first refusal pursuant to LSA-C.C. art. 2625.[5] The court considered the rights provided in these two clauses to be mutually exclusive.
In addition to concluding that these provisions contained mutually exclusive rights, the court found that the provisions were ambiguous when read together. The court noted that there were several ways to interpret the provisions. According to the trial court, the provisions could be interpreted to provide Quick Zone with a two-year option to acquire the property for $350,000.00, with a right of first refusal, only during that two-year period, if TTN Cathy obtained another offer. Alternatively, the provisions could be interpreted to grant Quick Zone a right of first refusal during the entire term of the lease. Conversely, the court found that, given the rights afforded TTN Cathy in the second provision, the first provision at issue could be interpreted as not in reality an option at all, but, instead, an irrevocable offer by Quick Zone to purchase the property for $350,000.00, an offer which TTN Cathy was not obligated to accept.
Moreover, the court noted that the parties and Roger, the drafter of the document, each believed that these provisions had different meanings. Thus, the court concluded that pursuant to LSA-C.C. art. 2057, the ambiguous provisions had to be construed in favor of the obligor, in this case, TTN Cathy. However, the court further found that the remaining provisions of the Addenda were not ambiguous and that the offending provisions were severable from the remainder of the agreement between the parties. Thus, the court concluded that Quick Zone was not entitled to have any other provisions of the Addenda nullified. For these reasons, the trial court granted the motion for involuntary dismissal.
From the judgment dismissing its claims against TTN Cathy, Quick Zone appeals, contending that the trial court erred in determining that an option and a right of first refusal are mutually exclusive and that these provisions were ambiguous.
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Belle Pass Terminal, Inc. v. John, Inc., 92-1544, 92-1545 (La. App. 1st Cir. 3/11/94), 634 So. 2d 466, 479, writ denied, 94-0906 (La. 6/17/94), 638 So. 2d 1094. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the common intent of the parties. LSC.C. art. 2045; Amoco Production Company v. Fina Oil & Chemical Company, 95-1185 (La. App. 1st Cir. 2/23/96), 670 So. 2d 502, 510-511, writ denied, 96-1024 (La. 5/31/96), 673 So. 2d 1037. This intent is to be determined within the four corners of the instrument when the words of the contract are clear, explicit, and lead to no absurd consequences, and in such cases, the contract cannot be explained or contradicted by parol evidence. LSA-C.C. art. 2046; LSA-C.C. art. 1848; Amoco Production Company, 670 So. 2d at 511.
However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties, and intent is a question of fact which is to be inferred from all of the surrounding circumstances. LSA-C.C. art. 2045; Amoco Production Company, 670 So. 2d at 511.
Whether a contract is ambiguous is a question of law. However, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifestly erroneous. Amoco Production Company, 670 So. 2d at 511-512.
Considering the provisions of the Addenda at issue herein, and the testimony and evidence presented in Quick Zone's case-in-chief, we agree with the trial court that the provisions are ambiguous, and we find no manifest error in the trial court's obvious finding that the ambiguity could not be resolved based on the testimony presented at trial. Pursuant to LSC.C. art. 2057, "[i]n case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation." See also City of Houma v. C-Well Ltd., 515 So. 2d 646, 648 (La. App. 1st Cir. 1987).
Accordingly, we find no error in the trial court's judgment, granting TTN Cathy's motion for involuntary dismissal and dismissing with prejudice Quick Zone's claims against it. Thus, in accordance with Uniform RulesCourts of Appeal, Rule 2-16.1(B), the judgment is affirmed. Costs of this appeal are assessed against plaintiff, Quick Zone, Inc.
AFFIRMED.
NOTES
[1] Quick Zone also named Thomas Nguyen as a defendant. However, by consent judgment, Nguyen was later dismissed as a party defendant. TTN Cathy also filed thirdparty demands against Century 21 Acadia Realty & Development Company, Inc. (Century 21 Acadia Realty); Lisa Thibodaux, an agent of Century 21 Acadia Realty; Action Realty, Inc., d/b/a Century 21 Action Realty, Inc. (Century 21 Action Realty); and Joseph Roger, an agent of Centruy 21 Action Realty. TTN Cathy alleged that these thirdparty defendants, as agents for TTN Cathy, breached their fiduciary duty to TTN Cathy by including the alleged option to purchase in the addenda to the lease agreement to the parties. Given the trial court's dismissal of Quick Zone's claims against TTN Cathy, the trial court likewise dismissed TTN Cathy's third-party demands herein.
[2] At trial, Roger denied that Nguyen had questioned him about this provision at the meeting to execute these documents.
[3] Also, in his previous deposition testimony, Roger interpreted these clauses that he drafted to mean that "if another offer came in the next day for $500,000, tenants had a right to go back, and they could have matched that offer."
[4] Louisiana Civil Code article 1933 provides that "[a]n option is a contract whereby the parties agree that the offeror is bound by his offer for a specified period of time and that the offeree may accept within that time." Civil Code article 2620 provides that "[a]n option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time." Article 2620 further provides that an option to buy or to sell must set forth the thing and the price and must meet the formal requirements of the sale it contemplates.
[5] Louisiana Civil Code article 2625 provides that "[a] party may agree that he will not sell a certain thing without first offering it to a certain person."